THEODORE STURGES *v.* JOHN RADFORD.

**Resulting Trust — Equities of the Trustee.**

> Where a party holds land in trust for another, but is equitably entitled to a lien thereon, the court will recognize his right in a decree adjudging him as trustee.[1]

Appellee, Radford, filed the bill in this case in the Chancery Court of Lauderdale county, against appellant, alleging that he had a verbal agreement with J. J. Shannon, the owner, to purchase the land described in his bill, on November 1, 1879, for $200. He, to give Shannon his note, with a surety, and Shannon agreed to make him a fee-simple deed to it; that Shannon prepared the note for complainant to sign, and procured a surety, and complainant carried the note to Sturges and he agreed to become

---

[1]

See cases cited in Walker *v.* Saunders, 1 Miss. Dec. 50, note 1.

While a trustee cannot, by virtue of his position as such, obtain an advantage for himself over his *cestui que* trust, he is not precluded from applying to the Chancery Court, to which he is subject, as trustee, to adjudge his right as an individual to an interest in the trust property not acquired after he became trustee, nor in hostility to the *cestui que* trust, but had before the acceptance of the trust. Davis *v.* Bomar, 55 Miss. 671.

The doctrine, as often announced, "that under no circumstances can a trustee claim, or set up a claim to the trust property adverse to the *cestui que* trust," is too broadly stated; the true rule is that a trustee shall not take advantage of his situation to obtain any personal benefit at the expense of his *cestui que* trust. Davis *v.* Bomar, 55 Miss. 671.

A resulting trust in land does not arise in favor of a person lending to the purchaser thereof money with which to pay a portion of the purchase price. Hitt *v.* Applewhite, 20 So. 161.

surety on the note and said he would sign the note and deliver it to Shannon, which complainant relied on, and at the same time complainant agreed to deliver to Sturges cotton to pay the note at maturity; that before the maturity of said note, complainant delivered to Sturges five bales of cotton and paid him $45 in money, in good faith to pay said note and Sturges promised to apply it to the payment of the note and afterwards told complainant that he had paid the note and that his deed was all right; that complainant remained in possession of the land until January, 1881, when he learned that Sturges had substituted his own individual note to Shannon for the land and had received a deed from Shannon, and upon the refusal of complainant to surrender possession, Sturges had instituted an action of unlawful entry and detainer against complainant in a justice of the peace court, where he obtained a judgment against complainant, which was appealed to the Circuit Court, and he again secured a judgment for the possession of the land and is about to secure a writ of possession. That Sturges paid for said land out of the proceeds of complainant's own cotton, while under promise to apply the cotton to the payment for said land and take the deed in complainant's name, and was the agent of complainant and held the title to said land as trustee for complainant. The prayer was for a writ of injunction restraining defendant from further prosecuting his suit at law and for a decree cancelling the deed from Shannon to Sturges, and that title to the land be vested in complainant. Defendant answered the bill, denying that he had any agreement with complainant to sign the note as surety and take title to the land in complainant, but alleged that complainant owed him a debt for supplies and delivered to him four and a half bales of cotton and $45. which was applied to the payment of that debt, and he held a deed of trust on the entire crop of complainant to secure that debt; that he bought the land from Shannon himself, without any agreement with complainant, as alleged in the bill. From a decree perpetuating the injunction and granting the other relief asked by complainant, defendant appeals.

Appealed from Chancery Court, Lauderdale county, Geo. Wood, Chancellor.

Reversed and remanded, April 9, 1883.

*Attorney for appellant, W. G. Grace.*

*Attorneys for appellee, Evans, Ramsey, and Smith.*

Brief of W. G. Grace:

It seems to me a mere statement of this case is sufficient to decide it for the appellant. The facts are that the appellee was in possession of the land in controversy, under a bond for title. After the death of the vendor, the land was sold by his administrator for unpaid purchase money. * * * The answer of appellant states that the land was sold by regular proceedings in the Chancery Court, by the administrator, to pay this balance of purchase money, and that Shannon, who afterwards sold to appellant, purchased it at that sale. These facts are nowhere controverted. The possession of the land at the time, by appellee, amounted to nothing. He had recognized Colonel Shannon as his landlord for two years, as the answer of appellant and the testimony of appellee shows, by paying him rent.

The record shows that Colonel Shannon sold the land to appellant in the spring of 1879, and that appellant permitted him to remain in the possession and use of the land until the spring of 1880, without making any charge for rent, other than 10 per cent on the purchase money; when as it appears by the record, that appellee was not only largely indebted to appellant at that time for supplies, but had actually contracted to sell, to one party, 500 cords of wood off the land. Appellant then instituted an action of unlawful detainer, against appellee, for the possession of the land, as provided for in the Code of 1880, and recovered judgment; appellant took an appeal to the Circuit Court, where appellant obtained judgment also. After these two fair trials, where all the facts were fully ventilated, the appellee resorts to chancery and obtains this most remarkable decree—reversing the whole object as I understand it, of a Chancery Court, and the law of resulting trusts; instead of decreeing that the man whose money paid for the land should have the title for it, he decrees that the man who does not have the scratch of a pen for the lands, shall have it, upon his naked possession. But it may be said the decree was predicated upon the parol agreement appellee says he had with Shannon and appellant. Let us see about that. Admit, for the sake of argument, that all appellee says in his bill, and the testi-

mony of appellee, his wife and son, upon this point to be true, this important fact remains to defeat appellee's pretensions of having paid appellant for the land in the fall of 1879, or at any other time.

First—It is shown by the answer of appellant and his exhibit, that in the fall of that year appellee was owing appellant $431.97 for supplies, etc., for which he had appellee's note and a deed of trust on his entire crop of cotton to be grown that year.

Second—There is no evidence in the record anywhere that appellee directed the application of the proceeds of the five bales of cotton and the $45, which he says he delivered and paid to appellant, in the fall of 1879, to the payment of the land, even if the cotton had been his to direct. It was not his or any part of it, until the deed of trust, which appellant held against him, made February 10, 1879, to secure the payment of the $431.97 for supplies, which were to have been paid for by October 10, 1879, was paid.

Third—After appellant had given appellee credit for the five bales of cotton (by the way, there were not five bales of it, but four and a half, or one light one), and the $45, which he said he delivered that fall, there was still a balance due appellant of $273.65.

Appellee claims that appellant charged him exorbitant prices for all his goods (appellant says he charged him as he did other customers who traded with him on a credit), and that if he had not been overreached by these overcharges, the cotton and money appellee paid him at different times would have paid for all the supplies that he ever got from appellant and for the land also. To prove this, he calls for an itemized account of all the articles he ever got from appellant during the whole of their dealings, from 1870 to 1880; appellant furnishes these with his answer; but not satisfied with them, after the evidence is taken, the cause at issue and motion made to dissolve the injunction, and overruled, they move for and obtained a decree of reference to a special commissioner, to restate the accounts after taking testimony. The commissioner, acting under his instruction, examines the accounts, takes testimony, and after giving appellee the benefit of every doubt as his report shows, reports that appellee owes appellant a balance of $95.64, after saying nothing about the land, except to deduct the 10 per cent which appellant had charged ap-

pellee on the purchase money for the land, by way of rent. The appellant took no testimony before the commissioner, nor did he cross-examine appellant's witness, nor did he file any exceptions to his report, choosing to let them have their own way about that. The commissioner, however, made many glaring errors—notably the one deducing in one batch an item of $50. This was done upon the sole testimony of appellee, unsupported by any circumstance, although the burden of proof was on him.

It will be remembered that the five bales of cotton and the $45, which he says he paid appellant for the land is the only pretense he makes anywhere in the record of having paid for the land, and we think we have shown very conclusively that he was mistaken in that. He pretends that he made several verbal or parol contracts to buy the land, but he is not supported in even that much by the record. The parol agreement to purchase the land from Shannon was abrogated. This attempt to consummate another trade with Shannon also failed by his own showing. Shannon did not want to be out of the use of the money any longer and told appellee if he would make him a note with a surety thereon, he would sell him the land. This he never did. By his own showing he never even signed the note himself. Appellee could not be mistaken as to the amount he was owing appellant at the time of his pretended purchase of the land through appellant from Shannon, for he says in his testimony that he gave appellant a new note and deed of trust for any balance owing the previous year, together with the amount appellant was to furnish him the ensuing year.

Brief for appellee is not found in the record.

OPINION.—CAMPBELL, C. J.:

In declaring the appellant to be a trustee of the title acquired from Shannon for the appellee, he should have been allowed to hold it as security for the payment to him of what it cost him, and which had not been paid by the appellee. The claim of the appellee is that the appellant agreed to buy the land for him, and to apply so much of his cotton crop delivered and other payments as was necessary to secure the land from Shannon, and that he delivered cotton and made payments in money sufficient to pay for the land. The cotton was conveyed by deed of trust for the

security of the appellant for other indebtedness of the appellee, and, if the payments by the appellee were applied to pay other indebtedness, secured by the deed of trust, the appellant should be allowed to follow the payment into the land, and fasten his claim on the land to that extent.

This is doing equity between the parties according to the dealings between them as we understand them from the record before us.

*Decree reversed* and cause remanded for further proceedings in accordance with this opinion.